1
2
3
4
5
6
7                     IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10
11   EDDIE L. PITTS,

12                 Plaintiff,              No.  2:12-cv-0823 AC P

13          vs.

14   C. DAVIS, et al.,                     ORDER &

15                 Defendants.             FINDINGS AND RECOMMENDATIONS

16   _____/

17          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Plaintiff alleges that health care providers at California State Prison - Solano (CSP-Sol)

19   were deliberately indifferent to his serious medical conditions.  Pending before the court is the

20   motion to dismiss brought by defendants Braunger, Kiesz, Austin, Morgan, Mefford, McAlpine,

21   Trujillo, Davis, Fleischman, and Villanueva (de la Vega).  ECF No. 24.  The motion has been

22   fully briefed.

23               ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

24          On November 11, 2010, plaintiff received an emergency medical evaluation for a

25   sports injury to his left shoulder and collarbone.  Plaintiff was x-rayed and provided a shoulder

26   brace, neck brace and pain medications, and a follow-up appointment with his primary care

1

physician (PCP) was scheduled.  Over the next several months, plaintiff was repeatedly thwarted in his attempts to be seen by his PCP and to receive the medication he required for his injury and for his chronic headaches, as well as treatment for an allergy-related rash that developed into sores.  The amended complaint details the history of plaintiff's attempts to secure treatment, and is supported by numerous health care services request forms that he submitted complaining of severe pain and unfilled prescriptions for ibuprofen and allergy medications. In response to these requests, plaintiff was seen on several occasions by nurses who failed to ensure that he saw a doctor or obtained his medications.

The amended complaint more specifically alleges as follows regarding the moving defendants.  Registered Nurse (RN) Braunger saw plaintiff on December 10, 2010, in response to a medical request form complaining of pain from his shoulder injury and the fact that he had not yet seen his PCP or been provided the ibuprofen previously prescribed for his head-aches.  RN Braunger failed to evaluate or address his medical complaints, and simply asserted that he had already received the ibuprofen.  RN Kiesz interviewed plaintiff on January 6, 2011 regarding a medical request seeking clearance for a job assignment.  During the interview plaintiff requested medical care for his shoulder injuries and help obtaining the ibuprofen which had been prescribed for him.  Defendant Kiesz provided no medical assistance and refused to address anything not related to the job clearance.

Defendant Trujillo is a supervising pharmacist at CSP-Sol.  Plaintiff alleged that he failed to fulfill his oversight and supervisory obligations to see that plaintiff was provided his prescriptions in a timely manner.  In January of 2011 an unnamed nurse informed plaintiff that the pharmacy was overwhelmed and backlogged with unfilled inmate prescriptions.

Defendants Austin, Morgan, Mefford and McAlpine are medical supervisors at CSP-Sol.  Plaintiff alleges that they were responsible for the manner in which the nurses, doctors and pharmacists addressed his medical problems and all had "prior knowledge" of a history or pattern of delays in the distribution of prescribed medication to prisoners and of the inadequate

1  response to inmates' appropriate requests for medical assistance.  This awareness arose from

2  prior 602 appeals, previous litigation, prison policies and regulations and contracts.

3          Defendants Davis, Fleischman and Villanueva (de la Vega) were CSP-Sol

4  medical department officials to whom plaintiff submitted 602 inmate appeals beginning on

5  March 30, 2011.  These defendants, along with defendants Austin, Trujillo and Boughn (not a

6  moving defendant), variously failed to address plaintiff's requests for medical relief, rejected his

7  appeals and/or otherwise engaged in a "historical pattern" of evading plaintiff's requests.

8                              MOTION TO DISMISS

9          Defendants move for dismissal on grounds that (1) plaintiff failed to exhaust

10  administrative remedies on two of his claims against defendants Braunger, Kiesz, Austin,

11  Morgan, Mefford, McAlpine, Trujillo, Davis, Fleischman, and Villanueva (de la Vega); and (2)

12  plaintiff's claims against defendants Austin, Morgan, Mefford, McAlpine, Trujillo, Davis,

13  Fleischman, and Villanueva (de la Vega) fail as a matter of law.

14  I.      Administrative Exhaustion

15          A.      The Exhaustion Requirement

16          The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that

17  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

18  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

19  such administrative remedies as are available are exhausted."  Regardless of the relief sought,

20  whether injunctive relief or money damages, inmates must exhaust administrative remedies.

21  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999); Booth v. Churner, 532 U.S. 731 (2001).

22  Administrative remedies must be exhausted before the complaint is filed.  McKinney v. Carey,

23  311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010)

24  (PLRA exhaustion requirement satisfied with respect to new claims within an amended or

25  supplemental complaint so long as administrative remedies are exhausted prior to the filing of

26  the amended or supplemental complaint).

1    Exhaustion of administrative remedies under the PLRA requires that the prisoner

2    complete the administrative review process in accordance with the applicable procedural rules.

3    Woodford v. Ngo, 548 U.S. 81 (2006).  An untimely or otherwise procedurally defective appeal

4    will not satisfy the exhaustion requirement.  Id. at 84.  When an inmate's administrative

5    grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as

6    "effectively unavailable."  Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010).

7    Exhaustion may be excused where administrative remedies are effectively

8    unavailable, see Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010), or where exhaustion

9    would be futile, see Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

10    Prior to January 28, 2011,[1] inmates were to proceed through four levels of appeal

11    to exhaust the appeal process: (1) attempted informal resolution, (2) formal written appeal on a

12    CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

13    third level appeal to the Director of the California Department of Corrections and Rehabilitation

14    (CDCR).  MTD, Declaration of J. Lozano, CDCR Chief of the Office of Appeals (ECF No. 24-

15    12) at ¶¶ 1-2; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing 15 Cal. Code

16    Regs. § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion

17    requirement.  Id. at 1237-38.  Since 2008, medical appeals have been processed at the third level

18    by the Office of Third Level Appeals for the California Correctional Health Care Services.

19    B.    Standards Governing the Motion

20    In a motion to dismiss for failure to exhaust administrative remedies under non-

21    enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

22    raising and proving the absence of exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

23

24        [1]    Since January 28, 2011, 15 Cal. Code Regs. § 3084.7 has modified the inmate
      appeals procedure to limit it to three levels of review with provisions allowing the first level to
25    be bypassed under specific circumstances.  It is unclear why declarant Lozano adheres to the old
      regime inasmuch as the appeals at issue are inmate appeals dating from March 2011 and concern
26    incidents beginning from February 2011.

4

1    Cir.), cert. denied, 540 U.S. 810 (2003).  The parties may go outside the pleadings, submitting

2    affidavits or declarations under penalty of perjury, and plaintiff must be provided with notice of

3    his opportunity to develop a record.[2]  Id. at 1120 n.14.  The court may decide disputed issues of

4    fact.  If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the

5    appropriate remedy.  Id. at 1120.

6              C.    Evidentiary Record Regarding Exhaustion

7              Defendants have produced evidence that plaintiff submitted at least ten (10)

8    administrative appeals between November 11, 2010, when the alleged Eighth Amendment

9    violations began, and March 30, 2012, when the complaint initiating this action was filed.  See

10   Zamora Decl, ECF No. 24-3; Cervantes Decl., ECF No. 24-7; Lozano Decl., ECF No. 24-12 (all

11   declarations submitted with attached exhibits).  Five of these appeals were exhausted by denial at

12   the Third Level.  ECF No. 24-3, Zamora Decl. at ¶ 5.  Of these five, two involve parties and/or

13   claims involved in this action.  See ECF No. 24-3 (Zamora Decl. at ¶¶ 5, 7).[3]  Plaintiff contends

14   that two other appeals, which were not denied at the third level, should nonetheless satisfy the

15   exhaustion requirement because full exhaustion was effectively unavailable.

16              1.    Log No. SOL-HC-11006664/SOL-24-11-10898[4]

17              This grievance was filed on April 8, 2011 and concerned plaintiff's ongoing

18   shoulder pain and delayed medication.  Plaintiff reported that he had seen one RN on February

19   14, 2011 and another on March 22, 2011, and told both about his shoulder pain and lack of

20

21         [2]    The court provided plaintiff with such notice by Order filed on November 6, 2012
22   (ECF No. 17), and defendants provided the contemporaneous Wyatt notice required by Woods v.
     Carey, 684 F.3d 934, 940 (9th Cir. 2012).  ECF No. 24-1.

23         [3]    Defendants did not include the third level decisions for these two appeals, but
     plaintiff supplied them with his First Amended Complaint.
24
25         [4]    Declarant Zamora, who does not include a copy of the third level appeal response
     for SOL-24-11-10898 misidentifies the third level tracking appeal number as SOL-HC-
26   11022574.  Plaintiff has, however, included such a copy which shows the tracking number to be
     SOL-HC-11006664.  Exhibit to First Amended Complaint, ECF No. 13-1 at 52-53.

ibuprofen.  He complained in an attachment that he had not been provided the prescribed

ibuprofen since February of 2011, that his shoulder pain had "gone 'inappropriately unassisted'"

and that  he continued "needlessly" to suffer "unbearable headaches" and persistent and

increasingly severe shoulder pain.   ECF No. 13-1 at 41.  Plaintiff received a first level appeal

response on June 2, 2011, partially granting plaintiff's appeal.   Plaintiff appealed to the second

level on June 18, 2011 and, on July 25, 2011, the appeal was granted in full.  Plaintiff

nevertheless appealed to the third level on August 1, 2011.  ECF No. 24-9, Ex. 4 to Cervantes

Decl; ECF No. 24-3, Zamora Decl. at ¶ 5.  This appeal was denied at the third level (Office of

Third Level Appeals - Health Care) on January 26, 2012.  ECF No. 13-1 at 52-53.  Defendants

concede that this appeal exhausted the claims it addressed, but not those at issue on this motion.

       2.       Log No. SOL- HC-11022512/SOL-24-11-11471[5]

       On July 12, 2011, plaintiff initiated a staff misconduct complaint contending that

CSP-Sol appeal coordinators Fleischman and Davis (as well as the warden and "unknown"

others) engaged in an "inveterate" practice of rejecting and canceling plaintiff's properly

submitted 602s.  Plaintiff requested an "impartial investigation" of those who had "sabotaged"

his appeals.  Specifically, plaintiff alleged that his medical 602 log no. SOL-24-11-10870

(concerning plaintiff's shoulder pain, discussed below) had been improperly rejected.  ECF No.

24-4, Ex. 2 to Zamora Decl.

       Plaintiff was denied at the first level on August 9, 2011.  Protesting that the

grievance had been inappropriately reviewed by one of the reviewer's against whom he was

making complaints, plaintiff submitted a second level appeal on August 21, 2011.  ECF No. 24-

4, Ex. 2 at 27 (Zamora Decl.).  The appeal was submitted to the third level on October 27, 2011

and denied on February 13, 2012.  ECF No. 13-1 at 33-35.  Defendants concede that this appeal

---

    [5]    In this instance, declarant Zamora appears to have misnumbered the lower level of
the appeal.  See, e.g., ECF No. 24-4, which shows that the at the first and second level, this
appeal was numbered SOL-24-11-11471, but compare Zamora Decl. at ¶ 5.

1 exhausted the claims it addressed, but not those at issue on this motion.

2                 3.       Log No. SOL-24-11-10706

3             Plaintiff submitted this grievance on March 30, 2011, complaining that he had not

4 received his prescription allergy medication following a January 20, 2011 evaluation by his PCP

5 and despite repeated written requests.  He complained of extreme shoulder pain and requested an

6 investigation and the names of employees responsible for not having provided him immediate

7 medical assistance.  ECF No. 13 at 59; ECF No. 29; see also ECF No. 24-4, Ex. 1 to Zamora

8 Decl.  Defendant Davis rejected this appeal at the first level because (1) it included too many

9 unrelated issues; (2) plaintiff had submitted two 602's in a 14-day period; and (3) plaintiff had

10 not submitted the grievance on an approved 602 form.  ECF No. 13-1 at 27-28.  Plaintiff

11 subsequently resubmitted Log No. SOL 24-11-10706 on April 19, 2011 and received a first level

12 response by defendant Villanueva (de la Vega).  ECF No. 13 at 64-66.  The response, indicating

13 that the appeal had been partially granted, noted that Villanueva (de la Vega) had requested a

14 refill on May 19, 2011 and that plaintiff had received a thirty-day supply of his medication on

15 March 25, 2011.  The response also indicated plaintiff would be seeing his PCP for follow-up

16 within the week.  As to plaintiff's request that an investigation be conducted to determine why

17 he had not received his medication on time, the response stated:

18                 As this incident involved multiple disciplines it is not possible to
                pinpoint that a single individual's actions led to your medication
19                 delay.  As we discussed, there are systems currently in place to
                ensure that incidents such as this are avoided in the future.
20

21 ECF No. 13 at 66; ECF No. 24-4, Ex. 1 to Zamora Decl. at 15.

22             On June 8, 2011, plaintiff submitted SOL 24-11-10706 for second level review.

23 The response indicated that the appeal was "partially granted," based on plaintiff's having

24 acknowledged receipt of his medications and plaintiff's apparent acknowledgment that he was

25 now receiving his meds on time.  The response also stated that plaintiff had received the

26 appropriate medical treatment, had not been subjected to deliberate indifference and had failed to

provide documentation to support his claim "of any form of staff misconduct."  ECF No. 13 at

67-69; ECF No. 24-4, Ex. 1 at 9 - 11.

On July 12, 2011, plaintiff filed a third level appeal stating that he did not receive

his medication for more than 65 days and protesting the finding at the second level that he had

received "appropriate medical treatment."  Plaintiff was notified by the Office of Third Level

Appeals-Health Care that his appeal package had been forwarded to the CSP-Sol Health Care

Appeals Coordinator "for further processing."  ECF No. 13 at 96.  In plaintiff's Health Care

Services Appeal History, there is an entry dated August 31, 2011, noting that the second level

appeal response needed to be amended because it did not address plaintiff's request to be

provided with the names of all individual medical staff responsible for seeing that plaintiff

receives his medications timely.  ECF No. 13 at 99.  Defendants include as an exhibit an

unfinished note indicating that the amended response and appeal had been sent to plaintiff via

institutional mail on September 28, 2011.  ECF No. 24-4 Ex. 1 to Zamora Decl. at 17.  However,

CSP-Sol did not process an amended second level response for SOL 24-11-10706 until

November 29, 2011.  ECF No. 24-4, Ex. 1 to Zamora Decl. at 2-4.  The amended second level

response did not include the information for which amendment was directed.  There is no

evidence that plaintiff submitted the amended second level decision for third level review.

4.     Log No. SOL 24-11-10870

Plaintiff submitted this appeal on April 19, 2011, presenting the complaints that

defendant Davis had instructed him to sever from SOL 24-11-10706.  Plaintiff complained that

unnamed RNs had failed to provide medical assistance on February 14, 2011 and March 22,

2011.  He requested action in the form of a thorough investigation and an explanation of why he

had yet to be seen by a physician for his shoulder injury.  He also requested all the names of staff

"responsible for this negligence."  ECF No. 13-1 at 15.  On April 29, 2011, the appeal was

returned to plaintiff, on a form under defendant Fleischman's name but evidently signed by

defendant Davis, because it concerned "an anticipated action or decision" and because it had not

8

been submitted on "the departmentally approved appeal forms."  ECF No. 13-1 at 23.  A

separately dated screening form dated May 12, 2011, indicates that SOL 24-11-10870 was being

returned to plaintiff for the reasons previously stated and also because plaintiff had submitted

more than one appeal within fourteen days.  ECF No. 13-1 at 20.

          The appeal was re-submitted.  On June 3, 2011, defendant Fleischman cancelled

the appeal at the first level as duplicative of SOL 24-11-10898.  It was determined that the

appeal was not a staff complaint because "there is no evidence supporting your allegation of staff

misconduct or violation of policy."  ECF No. 13-1 at 16-17; ECF No. 29 at 23-24.  On July 19,

2011, plaintiff attempted to resubmit the appeal with an explanation that that it had been rejected

in error and that his efforts at appeal were being "sabotaged."  ECF No. 29 at 25.  On July 22,

2011, defendant Davis made a notation that SOL 24-11-10870 was a duplicate of SOL 24-11-

10898 because the two appeals "were about the same issue shoulder injury and pain, which is

being handled by your pharmacy care provider."

      D.     Administrative Exhaustion as to Defendants Braunger and Kiesz

          Defendants contend that plaintiff did not administratively exhaust his claims that

RN Braunger and RN Kiesz failed to provide him with timely access to a primary care physician

(PCP).  Defendants are correct.  Assuming that plaintiff's inmate appeals regarding inadequate

assistance from the nursing line were directed at defendants Braunger and Kiesz,[6] and

disregarding the discrepancy in dates between the appeals and the complaint,[7] the appeals did not

---

[6]    The appeals did not name the nurses.  See ECF No. 13-1 at 15 (Log No. SOL 24-11-10870); id. at 41 (Log No. SOL 24-11-10898).  This is not fatal to exhaustion.  See Sapp, 623 F.3d at 824.

[7]    The appeals specifically complained about unsatisfactory visits with two unnamed nurses on February 14 and March 22, 2011.  See ECF No. 13-1 at 15 (Log No. SOL 24-11-10870); id. at 41 (Log No. SOL 24-11-10898).  The allegations of the complaint regarding defendants Braunger and Kiesz involve interviews on December 10, 2010 and January 6, 2011. See ECF No 13 at 7.  Given the liberality with which the court must construe pro per prisoner pleadings, and petitioner's attachment of his grievances to his complaint, the undersigned assumes for present purposes that the claims encompass all contacts with Braunger and Kiesz.

1  raise the issue of access to a PCP.  The appeals complained of the nurses' failure to themselves

2  provide adequate treatment, not their failure to ensure treatment by a physician.  <u>See</u> ECF No.

3  13-1 at 15 (Log No. SOL 24-11-10870); <u>id.</u> at 41 (Log No. SOL 24-11-10898).  Accordingly, the

4  motion to dismiss for non-exhaustion should be granted as to defendants Braunger and Kiesz.

5  The claim that these defendants failed to provide plaintiff timely access to a primary care

6  physician should be dismissed.[8]

7

8         E.      <u>Administrative Exhaustion as to Defendants Austin, Morgan, Mefford, McAlpine,</u>
   <u>Trujillo, Davis, Fleischman and Villanueva (de la Vega)</u>

9         Defendants contend that plaintiff failed to administratively exhaust his claim that

10  the moving supervisory defendants permitted or ratified a policy or practice of delays in the

11  prison pharmacy's distribution of prescribed medication.  Defendants are correct.  None of the

12  inmate appeals described above complains that any of the moving defendants promulgated,

13  enforced or ratified a policy that would have been the "moving force" behind the medication

14  delays that plaintiff experienced.[9]

15         Plaintiff did exhaust, or attempt to exhaust, his vigorous objections to various

16  supervisors' responses to his individual complaints and medical needs, and to their handling of

17  his appeals.  After Log No. SOL-24-11-10706 was rejected at the first level first by Davis and

18  then by Villanueva (de la Vega), and after defendant Trujillo signed off on the second level

19  response, plaintiff complained at the third level about the handling of the matter below.  In Log

20  No. SOL- HC-11022512/SOL-24-11-11471, plaintiff complained specifically that defendants

21  Fleischman and Davis had "engaged in an inveterate practice" of "artificially" rejecting or

22

23       [8]   The court notes that defendants Braunger and Kiesz have moved for dismissal of
   this claim only.  The claim that these defendants were deliberately indifferent to plaintiff's

24  serious medical condition by failing to ensure the provision of prescribed medication is
   unaffected by disposition of the motion.

25       [9]   Ratification of policy will support § 1983 liability only if the policy is the "moving
   force" behind the denial of the plaintiff's constitutional rights.  <u>See</u> <u>Williams v. Ellington</u>, 936

26  F.2d 881, 885 (9th Cir. 1991).

1   cancelling his appeals.  Defendant Mefford denied this appeal at the first level and defendant

2   Austin partially granted it at the second level.  ECF No. 29 at 41-46.  The third level denial at

3   ECF No. 13-1 at 33-35, shows plainly that the focus of this appeal was plaintiff's frustration with

4   the inmate grievance process:

5            Your CDCR 602-HC appeal submitted on July 12, 2011, indicated
             you were filing a staff complaints [sic] against California State
6            Prison-Solano (SOL) Health Care Appeals Coordinators (HCAC),
             the Chief Physician & Surgeon, and the Warden, as they engaged
7            in a practice of rejecting and cancelling your CDCR 602 appeals;
             you provided a history of appeal log number SOL-24-11-10870,
8            initially submitted on April 19, 2011; this appeal was rejected as
             you had submitted two appeals within 14 days; and the HCAC
9            neglected to provide you the log number of the other appeal you
             submitted within the 14 days; in May of 2011, you resubmitted
10           appeal SOL-24-11-10870; you were then interviewed on June 1,
             2011, regarding this appeal and its contents; on June 3, 2011, you
11           were advised appeal SOL-24-11-10870 was being cancelled as a
             duplicate appeal.
12
             You requested the following: that an impartial investigation into
13           this matter be conducted in regards to who sabotaged your appeals'
             and that it be explained exactly how the facts are duplicated.
14

15   ECF No. 13-1 at 33.

16           Plaintiff clearly alerted the various supervisory defendants that he objected to

17   their handling of his complaints – but that is not the same thing as alerting them to the claim that

18   they had a general policy of delaying medications that had caused the delays plaintiff

19   experienced.  That claim was not exhausted.

20           Plaintiff contends that his appeals complaining about the grievance process and

21   seeking an investigation were sufficient to exhaust, because the requested investigation would

22   have revealed the relevant facts.  The cases that he cites are inapposite.  For example, the district

23   court in  Irvin v Zamora, 161 F. Supp.2d 1125, 1133-35 (S.D. Cal. 2001), found that where

24   plaintiff had exhausted two separate grievances concerning his exposure to pesticide during an

25   incident of spraying, his claims were exhausted as to the individuals directly responsible for

26   spraying the pesticide even though they were not all named in the appeal process.  Unlike the

11

1    situation here, the wrong of which the plaintiff in Irvin complained – improper pesticide

2    spraying – was directly at issue in the inmate appeals.  The exhaustion issue in that case had to

3    do with the plaintiff's failure to name individuals whose identity he did not know prior to an

4    investigation.  Here, the fatal exhaustion defect is not with the naming of individuals but with the

5    failure to raise in the inmate appeals process the specific wrong alleged to have violated

6    plaintiff's constitutional rights: ratification of a policy to delay medication.  The ratification

7    claims against the supervisory defendants are unexhausted and should be dismissed.

8
     II.    Failure to State a Claim Against Defendants Austin, Morgan, Mefford, McAlpine,
9           Trujillo, Davis, Fleischman and (de la Vega)

10          A.    Standards Under Fed. R. Civ. P. 12(b)(6)

11          In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

12   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

13   it must contain factual allegations sufficient to "raise a right to relief above the speculative

14   level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading must contain

15   something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

16   cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

17   Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

18   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

19   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility

20   when the plaintiff pleads factual content that allows the court to draw the reasonable inference

21   that the defendant is liable for the misconduct alleged."  Id.

22          In considering a motion to dismiss, the court must accept as true the allegations of

23   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

24   (1976), construe the pleading in the light most favorable to the party opposing the motion and

25   resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied,

26   396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific

12

1   facts that are necessary to support the claim.'" <u>National Organization for Women, Inc. v.</u>

2   <u>Scheidler</u>, 510 U.S. 249, 256 (1994), <u>quoting</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561

3   (1992).  Moreover, pro se pleadings are held to a less stringent standard than those drafted by

4   lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

5          The court may consider facts established by exhibits attached to the complaint.

6   <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

7   consider facts which may be judicially noticed, <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d

8   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

9   papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir.

10  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

11  <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

12          B.    <u>Supervisory Liability Under 42 U.S.C. § 1983</u>

13          Liability under § 1983 arises only upon a showing of personal participation by the

14  defendant.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  Because there is no supervisory

15  responsibility in a § 1983 case, the plaintiff must plead facts showing that each official defendant

16  violated the constitution through his own individual actions.  <u>Iqbal</u>, 129 S.Ct. at 1948; <u>see also</u>

17  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (plaintiff must establish that supervisory

18  defendant caused or was personally involved in the alleged constitutional deprivation).

19  Accordingly, a supervisor must be alleged to have personally participated in the alleged

20  deprivation of constitutional rights; known of the violations and failed to act to prevent them; or

21  implemented a policy that repudiates constitutional rights and was the "moving force" behind the

22  alleged violations.  <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991).

23          C.    <u>Sufficiency Of Plaintiff's Claims Against Supervisory Defendants</u>

24          The court has found that plaintiff failed to exhaust his administrative remedies as

25  to defendants Austin, Morgan, Mefford, McAlpine, Trujillo, Davis, Fleischman and Villanueva

26  (de la Vega) on the claim that they ratified a policy or practice of delays in the pharmacy

13

1   department's distribution of prescribed medication.  Accordingly, the claim that remains for

2   review under Rule 12(b)(6) is that these defendants violated plaintiff's Eighth Amendment rights

3   by participating in the delay of medical treatment and pain medication.

4           Defendant Trujillo, as one of the pharmacists-in-charge, had the most direct

5   relationship of any of the moving defendants to the issue of medication distribution.  However,

6   the allegations as to Trujillo are merely that he failed to fulfill his oversight responsibilities

7   regarding the timely provision of prescription medication.  ECF No. 13 at 10-11.  This is

8   insufficient to support liability.  Taylor, 880 F.2d at 1045.  To state a claim against Trujillo,

9   petitioner must present facts demonstrating that he was personally aware of petitioner's serious

10  medical need, was aware that failing to provide the medications in a timely fashion would cause

11  plaintiff substantial suffering or further injury, and withheld the medication with the culpable

12  state of mind known as deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1057

13  (9th Cir. 2004).  Without such allegations of fact, Trujillo cannot have unnecessarily and

14  wantonly inflicted pain, and therefore cannot be liable for an Eighth Amendment violation.  See

15  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

16          The allegations against the other moving defendants are similarly defective.  The

17  medical supervisors (Austin, Morgan, Mefford and McAlpine) are not alleged to have had any

18  direct role in denying plaintiff treatment or medication.  Nor are there specific facts supporting a

19  conclusion that any of them were aware of plaintiff's serious medical needs and that they failed

20  to take action with full knowledge that continued delay would cause plaintiff further substantial

21  suffering.  The facts that they were responsible for medical care overall and allegedly knew

22  about systemic problems with medication and access to PCPs, ECF No. 13 at 11, do not support

23  liability for the alleged violation of plaintiff's Eighth Amendment rights.  See Taylor, 880 F.2d

24  at 1045.

25          Finally, the involvement of various defendants (Davis, Fleischman and

26  Villanueva (de la Vega), as well as some of the medical supervisors) in reviewing plaintiff's

14

1  inmate appeals does not support liability under § 1983.  See ECF No. 13 at 12-22.  Prisoners do

2  not have a "separate constitutional entitlement to a specific prison grievance procedure."

3  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640

4  (9th Cir. 1988).  Even the non-existence of, or the failure of prison officials to properly

5  implement, an administrative appeals process within the prison system does not raise

6  constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, Buckley v.

7  Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).

8  Specifically, a failure to process a grievance does not state a constitutional violation.  Buckley,

9  997 F.2d at 495.  Accordingly, plaintiff's allegations that various defendants "sabotaged" his

10  inmate appeals fail to state a claim.

11        For all these reasons, the motion to dismiss pursuant to Rule 12(b)(6) should be

12  granted.

13              PLAINTIFF'S MOTION TO CONFIRM SERVICE AND TO STAY

14        Also before the court is plaintiff's motion for confirmation of service and for

15  default.  ECF No. 32.  Plaintiff indicates that he has not received notice from the U.S. Marshal as

16  to which defendants have been served, although he has learned from opposing counsel that all

17  defendants except Boughn, Fontillas and Freland have been served.[10]  ECF No. 32 at 2-3.

18  Plaintiff asks this action be continued or stayed until such time as all named defendants have

19  been served.  Id. at 3.

20        The docket indicates that defendants Freland (Froland) and Fontillas have

21  returned executed waivers of service as of February 19, 2013 (ECF No. 25) and March 13, 2013

22

23      [10]    Executed waivers of service (ECF No. 20) were filed on January 10, 2013 for
    defendants Trujillo, Villanueva (de la Vega), Mefford, Kiesz, Braunger, McAlpine, Morgan,
24  Fleischman, Austin, Davis.  According to the U.S. Marshal's Office, these waivers of service
    were filed directly into the case docket without having first been returned to the marshal's office.
25  On June 24, 2013, the marshal's office, therefore, filed duplicates of those executed waivers into
    the case docket, noting that the waivers had previously been filed directly with the court (ECF
26  No. 35)).

1    (ECF No. 28), respectively.  Moreover, defendant Fontillas filed a motion to dismiss on July 10,

2    2013, after receiving an extension of time to do so.  See ECF Nos. 34, 36.  Although plaintiff

3    was evidently unaware of it, both Freland and Fontillas were served months before he brought

4    the instant motion.  The only defendant for whom no waiver of service has been filed is

5    defendant Boughn.

6            The time for defendant Freland (Froland) to respond to the complaint expired on

7    April 22, 2013, and no response has been filed.  Accordingly, this defendant will be ordered to

8    show cause why he or she should not be found to be in default.

9            Plaintiff's request for a stay lacks an appropriate foundation.  All defendants but

10   one have been served.  Only one served defendant has failed to respond.  Although it would

11   certainly promote the interests of efficiency and economy for all defendants to be served

12   simultaneously, and to file responsive pleadings close in time, this is often not possible in actions

13   such as these with a large number of defendants.  In addition, the court has herein adjudicated a

14   motion filed on behalf of the majority of the defendants.  Although the district court does have

15   the inherent power to impose a stay in order to control its own docket, Mediterranean

16   Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983), the present

17   circumstances do not warrant such action.  Accordingly, the undersigned will recommend denial

18   of plaintiff's request for a stay.

19           Accordingly, IT IS ORDERED that:

20           1.  The Clerk of the Court make a random district judge assignment to this case;

21   and

22           2.  Defendant Freland (Froland) show cause within fourteen days why he/she

23   should not be found in default and judgment entered against him/her.

24           IT IS RECOMMENDED that:

25           1.  Defendants' February 13, 2013 motion to dismiss (ECF No. 24) be granted,

26   and the following claims dismissed without prejudice:

16

1    (a) the claim against defendants Braunger and Kiesz regarding their alleged

2  failure to provided timely access to a primary care physician; and

3    (b) all claims against defendants Austin, Morgan, Mefford, McAlpine, Trujillo,

4  Davis, Fleischman and Villanueva (de la Vega);

5    2.  Plaintiff's May 31, 2013 motion for a stay (ECF No. 32) be denied;

6    3.  This action proceed on plaintiff's Eighth Amendment claims against

7  defendants Fontillas, Froland and Broughn, as well as on plaintiff's claim that defendants

8  Braunger and Kiesz were deliberately indifferent to his medical needs in relation to the delay in

9  plaintiff's receiving his prescribed medication.

10    These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

12  one days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within fourteen days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: July 23, 2013

19

20

21    ALLISON CLAIRE

    UNITED STATES MAGISTRATE JUDGE

22

23  AC:009

    pitt0823.mtd

24

25

26

    17