1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDDIE L. PITTS,                              No.  2:12-cv-0823 TLN AC P

12                  Plaintiff,

13        v.                                      FINDINGS & RECOMMENDATIONS

14   C. DAVIS, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court are defendants' motions for summary judgment.  ECF

19   Nos. 140, 143.

20   I.       Procedural History

21        Plaintiff filed his first amended complaint on July 27, 2012.  ECF No. 13.  On screening,

22   the court dismissed defendants State of California, Swarthout, and Cate.  ECF No. 14.  The court

23   also found that plaintiff had stated cognizable deliberate indifference claims against defendants

24   Fontillas, Braunger, Kiesz, and Froland,[1] for "failing to provide plaintiff with timely access to a

25   primary care physician and/or for not ascertaining that plaintiff's prescribed medications were

26

27        _____
          [1] Then identified as Freland.  See ECF No. 79 at 17-18 (directing Clerk of Court to correct
28   name on docket).

                                                1

timely." ECF No. 15 at 1-2.[2]  Plaintiff was also found to have stated cognizable claims against defendants Austin, Morgan, Mefford, McAlpine, Boughn, Trujillo, Davis, Fleischman, and de la Vega[3] for "the delayed shoulder injury pain and/or [for] permitting or ratifying a practice of policy of delays in the Pharmacy Department's distribution of prescribed medication." Id. at 2.

Defendants Kiesz, Fleischman, McAlpine, Trujillo, Austin, Morgan, Villanueva, Mefford, Braunger, and Davis filed a motion to dismiss on the grounds that some of plaintiff's claims had not been exhausted and that other claims failed to state a claim.[4]  ECF No. 24.  In findings and recommendations filed July 24, 2013, the court found that plaintiff had not exhausted his claims against defendants Braunger and Kiesz regarding denial of timely access to a primary care physician and took no position on the exhaustion of his claims that Braunger and Kiesz failed to ensure timely provision of prescription medication because the issue was not raised by defendants in their motion.  ECF No. 40 at 9-10 & n. 8.  The court also found that plaintiff had not exhausted his supervisory claims as to defendants Austin, Morgan, Mefford, McAlpine, Trujillo, Davis, Fleischman, and Villanueva and that his claims against these defendants based on their participation in the alleged violations were insufficient to state a claim.  Id. at 12-15.  The undersigned recommended dismissal of the claims against Braunger and Kiesz for failing to provide timely access to a primary care physician and dismissal of all claims against defendants

---

[2] All page numbers referenced in these findings and recommendations reflect the numbers assigned by the court at the top of each page upon filing.

[3] Identified alternatively as "Villanueva."  See ECF No. 40 at 1.

[4] The motions to dismiss based on plaintiff's failure to exhaust that were filed in this case were resolved prior to the Ninth Circuit's decision in Albino v. Baca, which requires that questions of administrative exhaustion be decided pursuant to motions for summary judgment. 747 F.3d 1162, 1166 (9th Cir. 2014).  In this case, copies of the appeals considered by the court in deciding the motions to dismiss were attached to the first amended complaint.  ECF No. 13 at 58-140; ECF No. 13-1 at 1-57.  Since the court may properly consider documents attached to the complaint, United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted), plaintiff's "failure to exhaust [was] clear from the face of the complaint and the result would not be altered by discovery," McBride v. Lopez, 807 F.3d 982, 985 (9th Cir. 2015) (citing Albino, 747 F.3d at 1169).  Because there was "no need for further factual development[,]" Albino does not affect the decisions in this case.  McBride, 807 F.3d at 985.

Austin, Morgan, Mefford, McAlpine, Trujillo, Davis, Fleischman, and Villanueva. Id. at 16-17. The findings and recommendations were adopted in full. ECF No. 66.

Both defendants Fontillas and Froland also moved to dismiss plaintiff's claims on the ground that he failed to exhaust his administrative remedies prior to filing suit. ECF Nos. 36-2, 46-1 at 3-5. Defendant Froland also moved to dismiss on the ground that the allegations in the complaint failed to state a claim. ECF No. 46-1 at 6-8. In findings and recommendations filed January 3, 2014, the court found that plaintiff had exhausted his claims as they related to the failure to ensure his prescriptions were timely refilled, but not as to his claim that they failed to ensure timely access to a primary care physician. ECF No. 79 at 9-10. The court then found that plaintiff's allegations against both defendants for failure to ensure that his prescriptions were timely refilled failed to state a cognizable claim. Id. 12-14. The undersigned recommended dismissal of all claims against both defendants. Id. at 18. The district judge adopted the findings and recommendations in part. ECF No. 97. Plaintiff's claims against defendants Fontillas and Froland for failing to ensure his prescriptions were timely refilled were dismissed, as were any claims he had against defendant Fontillas related to his November 24, 2010 interview. Id. at 3. However, plaintiff's claims that defendants failed to provide timely access to a primary care physician were found to state a claim and to have been exhausted and were therefore not dismissed. Id.

II.     Plaintiff's Allegations

Plaintiff's remaining claims are against defendants Kiesz and Braunger for failing to ensure his prescriptions for pain medication were timely refilled, and against defendants Fontillas and Froland for failing to provide timely access to a primary care physician.

Plaintiff alleges that on December 8, 2010, he submitted a request to refill/renew his ibuprofen prescription. ECF No. 13 at 7. He was then interviewed by defendant Braunger on December 10, 2010; the interview consisted of Braunger saying that she had checked and confirmed that plaintiff's ibuprofen was given to him. Id.

With respect to defendant Kiesz, plaintiff alleges that he submitted a request for kitchen clearance and a renewal of his ibuprofen prescription on January 4, 2011, and he was interviewed

3

by Kiesz on January 6, 2011.  Id.  During the interview he told Kiesz that he wanted assistance

with his other requests regarding his shoulder and delayed ibuprofen, and she told him that she

did not see anything about that in his file, she would only address what was on his request, and

after that they would be done.  Id. at 7-8.  Plaintiff left and was asked to sign a treatment refusal

form, which he did not sign because he was not refusing treatment; it was Kiesz that failed to

provide any treatment for his injuries and pain.  Id. at 8.

On February 10, 2011, plaintiff submitted a healthcare request in which he complained

that he was not getting his prescribed medications, that his shoulder pain was also causing neck

pain, and that his rash had developed into sores.  Id. at 9.  He was interviewed by defendant

Froland on February 14, 2011, and was told that he was already scheduled to see a primary care

physician in a week and could discuss his injuries at that time.  Id.  Plaintiff did not receive any

medical assistance at the time of the interview.  Id.

Finally, plaintiff submitted another healthcare request on March 20, 2011, in which he

requested to see a doctor for his shoulder injury and complained that his allergy medications had

not been provided.  Id. at 9.  Plaintiff was interviewed by defendant Fontillas on March 22, 2011,

at which time defendant Fontillas did nothing to assist plaintiff in seeing a primary care

physician.  Id. at 9-10.

III.    Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig.,

627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

The moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admission, interrogatory

answers, or other materials" or by showing that such materials "do not establish the absence or

///

4

1 presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

2 support the fact." Fed. R. Civ. P. 56(c)(1).

3     "Where the non-moving party bears the burden of proof at trial, the moving party need

4 only prove that there is an absence of evidence to support the non-moving party's case." Oracle

5 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

6 Indeed, summary judgment should be entered, "after adequate time for discovery and upon

7 motion, against a party who fails to make a showing sufficient to establish the existence of an

8 element essential to that party's case, and on which that party will bear the burden of proof at

9 trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

10 of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

11 a circumstance, summary judgment should "be granted so long as whatever is before the district

12 court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

13 56(c), is satisfied." Id.

14     If the moving party meets its initial responsibility, the burden then shifts to the opposing

15 party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

16 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

17 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

18 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

19 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

20 Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

21 fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

22 Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

23 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

24 reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

25     In the endeavor to establish the existence of a factual dispute, the opposing party need not

26 establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed

27 factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

28 truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

5

1  Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the

2  pleadings and to assess the proof in order to see whether there is a genuine need for trial."

3  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

4  　　　　"In evaluating the evidence to determine whether there is a genuine issue of fact, [the

5  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."

6  Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).

7  It is the opposing party's obligation to produce a factual predicate from which the inference may

8  be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

9  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

10  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

11  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

12  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank,

13  391 U.S. at 289).

14  　　　　On June 15, 2015, defendants served plaintiff with notice of the requirements for opposing

15  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 142-4; 143-1.

16  See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,

17  960 (9th Cir. 1998) (movant may provide notice) (en banc).

18  　　　　IV.　　Plaintiff's Responses

19  　　　　It is well-established that the pleadings of pro se litigants are held to "less stringent

20  standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

21  (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

22  govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other

23  grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

24  unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

25  subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited

26  access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

27  1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

28  "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

1    The court is mindful of the Ninth Circuit's more overarching caution in this context, as

2    noted above, that district courts are to "construe liberally motion papers and pleadings filed by

3    *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder,

4    611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, though plaintiff has largely complied with the

5    rules of procedure, the court will consider the record before it in its entirety. However, only those

6    assertions in the opposition which have evidentiary support in the record will be considered.

7    V.    Defendant Kiesz' Motion for Summary Judgment

8    Defendant Kiesz moves for summary judgment on the grounds that plaintiff did not

9    exhaust his administrative remedies, that his allegations against her do not rise to the level of a

10    constitutional violation, and that she is entitled to qualified immunity. ECF No. 140.

11    Plaintiff opposes the motion and argues that defendant Kiesz is barred from arguing

12    exhaustion because the issue was already fully litigated in her motion to dismiss and that she

13    should be estopped from raising the argument because plaintiff believed the exhaustion issue to

14    be over and he abandoned seeking any evidence on the issue. ECF No. 163 at 1-2. He also

15    argues that Kiesz' position that his allegations do not rise to the level of a constitutional violation

16    relies on the material facts being undisputed and they are not. Id. at 3. With respect to Kiesz'

17    qualified immunity argument, plaintiff argues that Kiesz should be estopped from arguing

18    qualified immunity because it has already been litigated and he therefore did not collect any

19    evidence on the matter. Id. at 3-4. He also argues that she is not entitled to qualified immunity

20    because the law was clear and Kiesz was responsible for knowing the law that governed her

21    profession. Id.

22    A.    Legal Standards for Exhaustion

23    Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

24    subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Under the PLRA,

25    "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

26    any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

27    such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v.

28    Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

1    seeking redress for prison circumstances or occurrences"). "The PLRA mandates that inmates

2    exhaust all available administrative remedies before filing 'any suit challenging prison

3    conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162,

4    1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

5         Failure to exhaust is "an affirmative defense the defendant must plead and prove."

6    Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there

7    was an available administrative remedy, and that the prisoner did not exhaust that available

8    remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

9    Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"

10   Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the

11   defendant must produce evidence showing that a remedy is available "as a practical matter," that

12   is, it must be "capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal

13   quotations marks omitted). Once the defendant has carried his burden, the burden shifts to

14   plaintiff to provide evidence that administrative remedies were unavailable to him. Id. at 1172.

15   "However, . . . the ultimate burden of proof remains with the defendant." Id.

16        For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

17   including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90

18   ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

19   rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

20   proper exhaustion." Jones, 549 U.S. at 219.

21        B.    Discussion

22        Plaintiff's initial argument that defendant Kiesz is barred from arguing exhaustion is

23   without merit. The order granting Kiesz' motion to dismiss stated that the decision had no effect

24   on the claim that Kiesz failed to ensure plaintiff's prescription medications were timely filled,

25   because the motion did not argue lack of exhaustion as to that claim. ECF No. 40 at 10 n.8.

26   While defendants are encouraged to bring claims that a plaintiff failed to exhaust early in a case,

27   it is not required, and Kiesz' argument that plaintiff failed to exhaust was properly brought in her

28   motion for summary judgment.

On the issue of exhaustion, the parties are in agreement that plaintiff filed a number of healthcare and non-healthcare appeals during the relevant time period.  Defendant Kiesz' Statement of Undisputed Facts (Kiesz' SUF) (ECF No. 140) at 7-9, ¶¶ 17-18; Response to Kiesz' SUF (ECF No. 165) at 7-8, ¶¶ 17-18.  What is in dispute is whether any of those appeals were sufficient to exhaust plaintiff's administrative remedies as to his claim that defendant Kiesz failed to ensure timely provision of his prescription pain medication.  Defendants claim that plaintiff did not file any appeals that dealt with his appointment with defendant Kiesz on January 6, 2011 (Kiesz' SUF at 9, ¶ 19), while plaintiff claims that appeal number SOL-24-11-10870 was intended to grieve "[a]ll non-assistance to his shoulder injury" until it was cancelled as a duplicate of appeal number SOL-24-11-10898 (Response to Kiesz' SUF at 8, ¶ 19) (alteration in original). He further asserts that as a result of the appeal being cancelled, he was prevented from developing necessary facts.  Id.  Plaintiff does not provide copies of or argue that he submitted additional appeals that exhausted his administrative remedies as to his interaction with Kiesz on January 6, 2011.  Response to Kiesz' SUF; ECF No. 163 at 1-2.

Assuming for the sake of this analysis that appeal number SOL-24-11-10870 was improperly cancelled, as plaintiff appears to argue, it is not sufficient to exhaust his administrative remedies.  The appeal states as follows:

> On approximately 02/10/22, I submitted a form 7362 complaining of a shoulder injury.  On 02/14/11, I was interviewed by R.N. regarding said.  No med assistance was provided.  On approximately 03/18/11, I submitted a 2nd form 7362 for same shoulder injury.  On 03/22/11, I saw R.N. again for said injury.  No assistance was provided.  To present date, I have yet to receive any assistance for shoulder.  I have continued to suffer severe pain without the requested med assistance since 02/10/11.

ECF No. 13 at 71.[5]  Broadly construing the appeal to encompass delays in plaintiff's receipt of his pain medication, this appeal notifies prison officials only that plaintiff began having issues with

---

[5] Defendant Kiesz attached a copy of the appeal to her motion for summary judgment, but the copy provided is barely legible.  ECF No. 141-2 at 25.  The court has therefore relied upon the copy of the appeal attached to the first amended complaint.  In the future, defendant should be more mindful of the quality of her attachments, as the court will not consider as evidence documents that it cannot read.

1  the treatment he was receiving on February 10, 2011.

2          Under 15 C.C.R. § 3084.2(a)(3),[6] an appeal was required to identify the staff members

3  involved, including the dates of their involvement, or any information that would assist in

4  identifying the staff members if their identities were not known.  There is no indication in the

5  appeal that plaintiff had any issues prior to February 10, 2011, either generally or with respect to

6  a particular interaction with healthcare staff, and the appeal would not have put prison officials on

7  notice of issues prior to that date or with the care provided by Kiesz.  Because plaintiff was seen

8  by Kiesz on January 6, 2011, and admits that he did not see defendant Kiesz after that date[7]

9  (Response to Kiesz' SUF at 2, ¶ 4), his interaction with Kiesz is not encompassed by the appeal.

10          Appeal SOL-24-11-10898, which was exhausted, is essentially a more detailed version of

11  SOL-24-11-10870.  In appeal SOL-24-11-10898, plaintiff specifically mentioned that his

12  ibuprofen prescription was not being refilled and that he had requested refills during his

13  encounters with healthcare staff on February 14, 2011; March 22, 2011; and March 30, 2011.

14  ECF No. 13-1 at 41.[8]  He further stated that he had been having difficulty getting his prescribed

15  pain medication "since February 2011."  Id. at 46.  As with appeal SOL-24-11-10870, this appeal

16  does not indicate that plaintiff had issues receiving his pain medication prior to February 2011.

17          Plaintiff submitted one other appeal, IA-24-2011-10816, that alleged that his prescription

18  pain medication was not being refilled and it is identical to SOL-24-11-10898.  ECF No. 141-2 at

19  40-44.  It appears that IA-24-2011-10816 was cancelled because the second page of the appeal

20  was not on the proper form (id. at 38-39) and it was assigned log number SOL-24-11-10898 when

21  plaintiff resubmitted it using the proper form.  As with appeal SOL-24-11-10898, appeal IA-24-

22  _____

23          [6] The regulations governing inmate appeals were modified in January 2011, but
   § 3084.2(a)(3) remained unchanged.  Compare Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2010) with
24  id. (2011).

25          [7] Though he alleges that he is "su[ing] for an event that 'started' on January 6, 2011" (id.,
   ¶ 3), the complaint does not contain any allegations against Kiesz beyond her alleged failure to
26  act on January 6, 2011 (ECF No. 13).

27          [8] Again, the copy of the appeal provided by defendant Kiesz (ECF No. 141-2 at 4) is
   difficult to read and the court has relied upon the higher quality copy provided by plaintiff.
28

10

1    2011-10816 does nothing to further plaintiff's claim that he exhausted his administrative

2    remedies.

3          Plaintiff submitted only two other appeals that addressed medication issues: SOL-24-11-

4    10706 and SOL SC 11000259.[9]  Appeal SOL-24-11-10706 alleged that plaintiff was not

5    receiving his prescription allergy medicine (ECF No. 141 at 23-24, 33-34, 44-45) while SOL SC

6    11000259 alleged that two nonparty nurses were harassing him and refusing to properly

7    administer his diet supplement drinks (ECF No. 141-1 at 20-22).  Neither of these appeals

8    exhausts plaintiff's administrative remedies for his claim that Kiesz failed to ensure his

9    prescription pain medication was timely refilled.

10          C.    Conclusion

11          The court finds that plaintiff did not exhaust his administrative remedies as to the claim

12    that defendant Kiesz failed to ensure his prescription for pain medication was timely filled.

13    Defendant Kiesz' motion for summary judgment should therefore be granted and the remaining

14    claim against defendant Kiesz should be dismissed.  Because the court recommends dismissal

15    based on plaintiff's failure to exhaust, it declines to address defendant Kiesz' other arguments.

16          VI.    Defendants Braunger, Fontillas, and Froland's Motion for Summary Judgment

17          Defendants Braunger, Fontillas, and Froland move for summary judgment on the grounds

18    that they were not deliberately indifferent to plaintiff's medical needs and that they are entitled to

19    qualified immunity.  ECF No. 143-3 at 14-20.

20          Plaintiff argues that defendants' motion should be denied because there are disputed

21    issues of material fact, as evidenced by the court's screening of the complaint and orders on

22    defendants' motions to dismiss.  ECF No. 162 at 1-3.  He further argues that they are not entitled

23    to qualified immunity because the law was clear and defendants were responsible for knowing the

24    law that governed their profession.  Id. at 3-4.

25    ///

26

27          [9] Appeal SOL SC 11000259, which is a staff complaint, was initially opened as a regular
      healthcare appeal and assigned number SOL HC 11022574.  ECF No. 13 at 103.

28

1        A.       <u>Legal Standard Governing Eighth Amendment Claims</u>

2             In order to state a §1983 claim for violation of the Eighth Amendment based on

3 inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

4 deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

5 To prevail, plaintiff must show both that his medical needs were objectively serious, and that

6 defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294,

7 298-99 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The

8 requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>,

9 503 U.S. 1, 5 (1992).

10             "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

11 further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v.</u>

12 <u>Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting <u>Estelle</u>, 429 U.S. at 104), <u>overruled on other</u>

13 <u>grounds</u> <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc). Examples of a

14 serious medical need include "[t]he existence of an injury that a reasonable doctor or patient

15 would find important and worthy of comment or treatment; the presence of a medical condition

16 that significantly affects an individual's daily activities; or the existence of chronic and

17 substantial pain." <u>Id.</u> at 1059-60 (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir.

18 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989)).

19             In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very

20 demanding standard for "deliberate indifference." "While poor medical treatment will at a certain

21 point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does

22 not suffice." <u>Wood</u>, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an

23 unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to

24 establish an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 836-37 & n.5. It is not enough

25 that a reasonable person would have known of the risk or that a defendant should have known of

26 the risk. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference

27 is established only where the defendant *subjectively* "knows of and disregards an excessive risk to

28 inmate health and safety." <u>Id.</u> (citation and internal quotation marks omitted). Deliberate

1    indifference can be established "by showing (a) a purposeful act or failure to respond to a

2    prisoner's pain or possible medical need and (b) harm caused by the indifference. Jett v. Penner,

3    439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted).  A difference of opinion between an

4    inmate and prison medical personnel—or between medical professionals—regarding appropriate

5    medical diagnosis and treatment are not enough to establish a deliberate indifference claim.

6    Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.  To establish a

7    difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the

8    course of treatment the [medical personnel] chose was medically unacceptable under the

9    circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

10           B.     Material Facts

11           The following material facts are undisputed except as indicated.

12                  1. The Parties

13           At all times relevant to the complaint, plaintiff was an inmate in the custody of the

14    California Department of Corrections and Rehabilitation (CDCR) at the California State Prison

15    (CSP)-Solano.  Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 143-2) at 1, ¶ 1;

16    Response to DSUF (ECF No. 162) at 9, ¶ 1.  At all relevant times defendants Braunger, Froland,

17    and Fontillas were registered nurses working at CSP-Solano.  DSUF at 1-2, ¶¶ 2-4; Response to

18    DSUF at 10, ¶¶ 2-4.

19                  2. Healthcare Procedures

20           Inmates could request healthcare services using CDCR Form 7362.  DSUF at 2, ¶ 6;

21    Response to DSUF at 11, ¶ 6.  The forms were to be collected by healthcare staff on a daily basis

22    and reviewed by a registered nurse (RN).  DSUF at 2, ¶¶ 7, 10; Response to DSUF at 11-12, ¶¶ 7,

23    10.[10]  Forms that requested prescription renewals and refills did not require a face-to-face meeting

24    with a RN.  DSUF at 2, ¶ 8; Response to DSUF at 12, ¶ 8.  If the Form 7362 reported medical

25           [10] Plaintiff denies DSUF ¶¶ 5, 7-8, 10, and 12-14 on the ground that defendants present
26    the policies on how things were supposed to be done as factual statements of what was actually
     done, but he does not dispute the policy requirements themselves.  The court considers these
27    statements as undisputed only to the extent they reflect the procedures outlined in the policies and
     does not consider them to be evidence of what was actually done.
28

1    symptoms and requested medical services, the inmate was to be seen in person by a RN who

2    made a determination whether a referral to a physician was necessary.  DSUF at 2-3, ¶¶ 11, 14;

3    Response to DSUF at 13-14,¶¶ 11, 14.[11]  Inmates who needed to see a physician were to be seen

4    immediately in the case of an emergency, within twenty-four hours for urgent conditions, and

5    within fourteen days for routine, non-urgent matters.  DSUF at 3, ¶ 14; Response to DSUF at

6    13-14, ¶ 14.  The RNs did not schedule the appointments with the physicians.  DSUF at 3, ¶ 15;

7    Response to DSUF at 14, ¶ 15.[12]

8                        3.  Plaintiff's Interaction with Defendant Braunger

9            Plaintiff's records indicate that on December 7, 2010, a physician renewed his

10   prescription for ibuprofen and faxed it to the pharmacy the same day.  ECF No. 143-7 at 18;

11   DSUF at 4, ¶ 21; Response to DSUF at 15, ¶ 21.[13]  On December 8, 2010, plaintiff submitted a

12   Form 7362 complaining of pain in his left shoulder/back and neck area and requesting a renewal

13   of his ibuprofen prescription.  DSUF at 4, ¶ 22; Response to DSUF at 15, ¶ 22.  The same day he

14   signed for a fifteen day supply of ibuprofen that was to be kept on person (KOP).  DSUF at 4, ¶

15   23; ECF No. 143-7 at 20.[14]  On December 9, 2010, defendant Braunger reviewed plaintiff's

16   December 8, 2010 healthcare request.  DSUF at 4, ¶ 24; Response to DSUF at 16, ¶ 24.  Plaintiff

17   was seen by Braunger on December 10, 2010.  ECF No. 13 at 7.  In addressing plaintiff's Form

18   ///

19   ────────────────────

20           [11] Plaintiff objects to DSUF ¶ 11 on the grounds that it is not supported by the evidence
     cited.  The objection is overruled as the declaration and policy cited sufficiently support
21   defendants' statement.

22           [12] Plaintiff denies DSUF ¶ 15 on the ground that RNs determined the timeframe for
     appointments.  This is not the same as scheduling an appointment and plaintiff does not offer
23   evidence that RNs were responsible for scheduling.  DSUF ¶ 15 is deemed undisputed.

24           [13] Plaintiff disputes DSUF ¶ 21 only as to whether the refill was actually faxed, which is
     immaterial to deciding the motion.  What is material is whether his records indicate the refill was
25   faxed, which they do.  ECF No. 143-7 at 18.

26           [14] Plaintiff does not offer any response to DSUF ¶ 23 (Response to DSUF at 15-16, ¶ 23)
27   and his records indicate that the statement is true (ECF No. 143-7 at 20).  DSUF ¶ 23 is therefore
     deemed admitted.

28

                                                    14

1  7362, defendant Braunger reviewed plaintiff's prescription records.  DSUF at 4, ¶ 25; Response

2  to DSUF at 16, ¶ 25.[15]

3      The records reflect that plaintiff's prescription for ibuprofen was renewed on December 7,

4  2010; that a refill was pending at the time (ECF No. 143-7 at 18); and that he signed for receipt of

5  a fifteen day supply of ibuprofen on December 8, 2010 (id. at 20).  DSUF at 4-5, ¶¶ 25, 27-28;

6  Response to DSUF at 16-17, ¶¶ 25, 27-28.  Based on this information, Braunger determined that

7  plaintiff's prescription request had been addressed.   DSUF at 4-5, ¶¶ 25, 27-28; Response to

8  DSUF at 16-17, ¶¶ 25, 27-28.[16]

9          4.  Plaintiff's Interaction with Defendant Froland

10      On February 10, 2011, plaintiff submitted a Form 7362 requesting healthcare services and

11  complaining of shoulder and neck pain from an injury sustained in September 2010, and itchy,

12  dry skin that was causing sores.  DSUF at 5, ¶ 33; Response to DSUF at 18, ¶ 33.  Plaintiff further

13  stated that an x-ray of his collar bone was negative, his bruising was gone, and that he had not yet

14  received his prescription medications.  ECF No. 143-7 at 22.  He was interviewed by defendant

15  Froland about his request on February 14, 2011, at which time Froland re-faxed his prescriptions

16  to the pharmacy.  Id.; ECF No. 13 at 9.  During the interview, defendant Froland attempted to

17  take plaintiff's vital signs, but plaintiff refused.  DSUF at 5, ¶ 36; Response to DSUF at 19, ¶ 36.

18  Froland also had plaintiff move his left shoulder in a circular motion and noted that he had pain

19  when he moved his shoulder.  DSUF at 6, ¶¶ 38-39; Response to DSUF at 19, ¶¶ 38-40; ECF No.

20  162 at 6-7, ¶ 10.  At the time plaintiff was seen by defendant Froland, he was already scheduled

21  to see a physician on February 21, 2011, and was informed of the appointment.  DSUF at 6, ¶ 42;

22      [15] Plaintiff denies DSUF ¶ 25 but offers no evidence that defendant Braunger did not
23  review his records, and Braunger's declaration regarding her actions and notation that medication
24  was dispensed on December 8, 2010, support the statement.  DSUF ¶ 25 is therefore deemed
   admitted.

25      [16] Plaintiff denies DSUF ¶¶ 27-28 on the grounds that defendant Braunger did not record
26  her thoughts on what the records meant.  He does not dispute the accuracy of his medical records
   or provide any evidence that would indicate Braunger reached a different conclusion from her
27  review of the records.  The record and plaintiff's own allegation that Braunger told him his
   prescription had already been filled support the statements and they are deemed admitted.

28

1    Response to DSUF at 20, ¶ 42.  Since plaintiff was already scheduled to see a physician in seven

2    days, defendant Froland did not request another appointment be scheduled.  DSUF at 6, ¶ 45;

3    Response to DSUF at 18-19, ¶ 45.[17]

4                      5.   Plaintiff's Interaction with Defendant Fontillas

5            On March 20, 2011, plaintiff submitted a Form 7362 in which he stated that he had seen a

6    RN for a shoulder injury and pain on approximately February 9, 2011, and that he was scheduled

7    to see a physician about his pain as a result but the appointment did not happen.  ECF No. 143-7

8    at 23.  He also stated that he had not received his allergy medication and needed to renew his

9    ibuprofen.  Id.  Plaintiff was seen by defendant Fontillas on March 22, 2011.  Id.  During the

10   appointment, defendant Fontillas faxed plaintiff's prescription to the pharmacy and called to

11   make sure it was received.  DSUF at 8, ¶ 59; Response to DSUF at 25, ¶ 59.  She also measured

12   plaintiff's vital signs and asked him about what problems he was having.  DSUF at 7, ¶¶ 52, 54;

13   Response to DSUF at 23-24, ¶¶ 52, 54.  At the time plaintiff was seen by defendant Fontillas, he

14   was scheduled to be seen by a physician on April 4, 2011 (ECF No. 143-7 at 23), which was

15   thirteen days after his appointment with Fontillas.

16          C.    Discussion

17                 1.  Defendant Braunger

18          The record shows, and plaintiff does not deny, that on December 8, 2010, two days before

19   he saw defendant Braunger, plaintiff signed for receipt of a fifteen-day supply of ibuprofen.

20   DSUF at 4, ¶ 23; ECF No. 143-7 at 20.  The record also shows that when plaintiff saw Braunger

21   on December 10, 2010, his ibuprofen prescription had already been renewed.  ECF No. 143-7 at

22   18; DSUF at 4, ¶ 21; Response to DSUF at 15, ¶ 21.  While plaintiff argues that there is no

23   evidence of exactly when the renewal was faxed to the pharmacy, he does not dispute that the

24   prescription was in fact renewed.  Response to DSUF at 15, ¶ 21.  Even if plaintiff affirmatively

25   claimed that the prescription was not timely faxed, that assertion would be clearly contradicted by

26   _____

27          [17] Plaintiff's arguments regarding what Froland should have done do not create a dispute
     as to what she actually did or her reasoning for her actions.  DSUF ¶ 45 is therefore deemed
     admitted.

28

                                            16

1    the medical records showing that he signed for receipt of another fifteen-day supply of ibuprofen

2    on December 12, 2010, and that that supply was issued based on the renewed prescription.  ECF

3    No. 143-7 at 21.

4         Although plaintiff argues that defendant Braunger failed to conduct a physical

5    examination or address his other complaints (ECF No. 162 at 2; Response to DSUF at 17-18,

6    ¶¶ 29, 31), his only remaining claim against Braunger is that she failed to ensure that he timely

7    received his prescription for pain medication.  The record and plaintiff's own allegations

8    demonstrate that defendant Braunger verified that plaintiff received his ibuprofen two days prior

9    to his appointment with her and that the prescription had already been renewed by a physician.

10   There is no indication that Braunger had any reason to believe that plaintiff was in danger of not

11   receiving his pain medication in a timely manner.  Moreover, given that plaintiff had only just

12   received a refill and renewal of his ibuprofen prescription, it is not clear what further action

13   defendant Braunger could or should have taken with respect to plaintiff's receipt of his

14   medication.

15        For these reasons, the court finds there no evidence that defendant Braunger was

16   deliberately indifferent to plaintiff's serious medical need with respect to plaintiff's timely receipt

17   of his prescription pain medication.

18             2.  Defendants Froland and Fontillas

19        Plaintiff's remaining claims against defendants Froland and Fontillas are that they failed

20   to provide him with timely access to a physician when they saw him about his healthcare requests

21   on February 14, 2011, and March 22, 2011, respectively.  Plaintiff appears to argue that on both

22   dates his condition warranted emergency or urgent care, which defendants would have known had

23   they actually conducted a physical examination as required.  ECF No. 162 at 2-3.

24        While there is some dispute over the extent of the examinations performed by defendants

25   Froland and Fontillas, these disputes do not create an issue of material fact.  Plaintiff alleges that

26   both defendants failed to conduct a physical evaluation (Response to DSUF at 18-19, 23, ¶¶ 35,

27   40, 50), but his own admissions and statements demonstrate that he refused to allow defendant

28   Froland to take his vital signs (Response to DSUF at 19, ¶ 36) and that, at a minimum, he verbally

17

1    relayed his problems to both defendants (ECF No. 162 at 6-7, ¶ 10; Response to DSUF at 23,

2    ¶ 52), defendant Froland evaluated the movement of his shoulder (ECF No. 162 at 6-7, ¶ 10), and

3    defendant Fontillas took his vital signs (Response to DSUF at 24, ¶ 54).  Even if this was the full

4    extent of the evaluations conducted by each defendant, plaintiff's allegations that they did not

5    provide him with timely access to a physician still fail to establish and Eighth Amendment

6    violation.

7           Though plaintiff argues that his condition was an emergency or urgent and required that

8    he see a physician immediately (ECF No. 162 at 2-3), the policy that he cites indicates that the

9    Urgent/Emergent Response procedures covered situations where the inmate's condition was life-

10   threatening.  Id. at 28.  There is no evidence that plaintiff was suffering from, or appeared to be

11   suffering from, a life-threatening condition.  Moreover, though plaintiff argues that defendants

12   failed to conduct proper assessments[18] and therefore did not timely refer him to a physician (ECF

13   No. 162 at 2-3; Response to DSUF at 20-22, 26, ¶¶ 45, 47, 63), both times he was seen he was

14   already scheduled to see a physician within the fourteen days mandated for routine referrals (id. at

15   20, 26, ¶¶ 42, 63).  Although it appears that neither of the scheduled doctor's appointments

16   occurred, there is no evidence that either defendant had reason to believe the appointments would

17   not take place as scheduled or that they had anything to do with plaintiff not being seen as

18   scheduled.

19          Plaintiff's belief that he should have been referred to a physician immediately amounts to

20   no more than a difference of opinion.  The evidence shows that plaintiff's shoulder pain was due

21   to an old injury (DSUF at 5, ¶ 33; Response to DSUF at 18, ¶ 33); that he had a prescription for

22   pain medication that both defendants contacted the pharmacy to have filled (ECF No. 13 at 9;

23   Response to DSUF at 25, ¶ 59); that he had already been seen by a physician about his rash and

24   the issue was that he had not yet received the prescribed allergy medication (ECF No. 13 at 8),

---

25          [18] To the extent plaintiff may be attempting to argue that defendants Froland and Fontillas
26   were deliberately indifferent to his medical needs because they failed to provide treatment during
     the appointments, these allegations are immaterial to this motion because plaintiff's only
27   surviving claim against these defendants is that they failed to provide him timely access to a
     physician.
28

1    which both defendants attempted to address (ECF No. 13 at 9; Response to DSUF at 25, ¶ 59);

2    and that he was already scheduled to see a physician within the required fourteen-day period for

3    routine referrals (Response to DSUF at 20, ¶ 42; ECF No. 143-7 at 23).  He offers no evidence

4    that it was medically unacceptable for defendants to determine that he required only a routine

5    referral and that his already scheduled appointments met that need.  The evidence before the court

6    shows that defendants conducted some level of evaluation of plaintiff's condition and believed

7    plaintiff's already scheduled appointments, coupled with resubmitting his prescriptions to the

8    pharmacy, were sufficient to meet his needs.  At most, defendants' failure to refer plaintiff for an

9    earlier physician's appointment constitutes negligence, which does not rise to the level of

10   deliberate indifference.

11          D.      Conclusion

12          For the reasons set forth above, it is recommended that defendants' motion for summary

13   judgment be granted and the remaining claims against the defendants be dismissed.  Because the

14   court finds that there are no triable issues of fact regarding deliberate indifference, it declines to

15   consider defendants' qualified immunity argument.

16   VII.   Summary

17          Defendant Kiesz' motion for summary judgment should be granted because plaintiff did

18   not exhaust the appeals process before he filed this lawsuit.

19          Defendants Braunger, Froland, and Fontillas' motion for summary judgment should be

20   granted because plaintiff cannot show that these defendants were deliberately indifferent to his

21   serious medical needs.  Plaintiff's prescription for pain medication had already been refilled and

22   renewed by the time he saw defendant Braunger, and plaintiff's belief that defendants Froland

23   and Fontillas should have referred him for an immediate physician's appointment is nothing more

24   than a difference of opinion.

25          IT IS HEREBY RECOMMENDED that:

26          1.  Defendant Kiesz' motion for summary judgment (ECF No. 140) be granted and the

27   remaining claim against defendant Kiesz be dismissed without prejudice for failure to exhaust.

28   ///

                                                      19

1         2.  Defendant Braunger, Froland, and Fontillas' motion for summary judgment (ECF

2    No. 143) be granted and the remaining claims against defendants Braunger, Froland, and Fontillas

3    be dismissed with prejudice.

4         3.  Judgment be entered for the defendants.

5         These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7    after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10   objections shall be served and filed within fourteen days after service of the objections.  The

11   parties are advised that failure to file objections within the specified time may waive the right to

12   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13   DATED:  March 22, 2016.

14

15                                                                                                                          

16   ALLISON CLAIRE

                       UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28